FILED
**United States Court of Appeals
Tenth Circuit**

**August 7, 2026**

**Christopher M. Wolpert
Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARCUS HAHN,

    Defendant - Appellant.

No. 24-2069

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. Nos. 1:21-CV-00455-WJ-JFR & 1:00-CR-01344-WJ-JFR-1)**
_____

Mark T. Baker, Peifer, Hanson, Mullins & Baker, P.A., Albuquerque, New Mexico, for Defendant-Appellant.

Marcus Hahn, filed an opening brief, pro se.

Tiffany L. Walters, Assistant U.S. Attorney (Todd Blanche, Acting Attorney General, and Ryan Ellison, First Assistant U.S. Attorney, with her on the briefs), District of New Mexico, Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **HOLMES**, Chief Judge, **TYMKOVICH**, and **MORITZ**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.
_____

    Marcus Hahn pleaded guilty in 2001 to multiple counts of sexual exploitation

of minors and distribution of controlled substances with intent to commit a crime of

violence.  In exchange for his plea, the government dismissed nine related charges.

At the time, it was understood that a crime of violence under the operative statute, 18

U.S.C. § 16(b), included conduct covered by Hahn's plea.  But after the Supreme

Court held in *Sessions v. Dimaya*, 584 U.S. 148 (2018), that 18 U.S.C. § 16(b)'s

definition of a crime of violence was unconstitutionally vague, Hahn filed a § 2255

habeas motion to challenge his controlled-substances convictions.  The district court

dismissed Hahn's motion as untimely and rejected on the merits his vagueness claim.

Exercising jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 2255(d), we

**AFFIRM**.  Because Hahn's motion falls outside § 2255(f)'s one-year statute of

limitations, it is untimely.  And he is not eligible for the miscarriage-of-justice

exception to the limitations period because he cannot show he was actually innocent

of the equally serious charges the government dismissed as part of the plea deal.

The district court thus correctly dismissed Hahn's habeas motion.

## I.    Background

Federal law enforcement began investigating Marcus Hahn on an indictment

for multiple drug and firearm charges in 1999.  During a search of his home, officers

uncovered evidence that Hahn had sexually abused minors.  In a separate indictment,

a grand jury charged him on sixteen counts: Counts 1–6 for sexual exploitation of

minors; Counts 7–9 for interstate transportation of child pornography; Counts 10–11

for possession of child pornography; and Counts 12–16 for distribution of a

controlled substance without the recipient's knowledge and with intent to commit a

crime of violence.  The controlled-substance charges were brought under 21 U.S.C.

§ 841(b)(7), which incorporates the definition of a crime of violence in 18 U.S.C. § 16, and identified the underlying crime of violence as criminal sexual contact of a minor under New Mexico Stat. § 30-9-13.

Hahn pleaded guilty to Counts 3–6 for sexual exploitation of a minor. He also pleaded guilty to Counts 15–16 and no contest to Count 14. The district court sentenced Hahn to 292 months' incarceration, consecutive to his separate sentence for the drug and firearm offenses. Hahn appealed, but we dismissed based on an appellate waiver in his plea agreement. *United States v. Hahn*, 359 F.3d 1315, 1329–30 (10th Cir. 2004) (en banc). Hahn filed a § 2255 habeas motion soon after, which the district court denied. Hahn appealed, and we affirmed. *United States v. Hahn*, 261 F. App'x 90, 92 (10th Cir. 2008).

In 2021, Hahn requested permission to file a second-or-successive § 2255 motion challenging his § 841 convictions based on the due process holding announced by the Supreme Court in *Sessions v. Dimaya*, 584 U.S. 148 (2018). *Dimaya* held that the residual clause in 18 U.S.C. § 16(b)—defining a "crime of violence" as an offense that "by its nature, involves a substantial risk that physical force . . . may be used in the course of committing the offense"—was unconstitutionally vague. 584 U.S. at 153, 174–75. The Court left undisturbed the elements clause in § 16(a)—defining a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force." *Id.* at 153. Hahn argues that the sentencing court relied on § 16's residual clause to categorize criminal sexual contact of a minor under N.M. Stat. § 30-9-13 as a crime of violence.

3

And since his § 841 convictions depend on that constitutionally infirm categorization, he claims they are no longer valid. Hahn also contends that *Dimaya*'s rule applies retroactively to cases on collateral review because the Supreme Court has recognized retroactivity in cases involving the invalidation of similar residual clauses. *See Welch v. United States*, 578 U.S. 120, 130 (2016) (holding the Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), was retroactive because it "altered 'the range of conduct or the class of persons that the law punishes'" by determining the residual clause in 18 U.S.C. § 924(e)(2)(B) was void for vagueness).

Since the government agreed that *Dimaya* announced a new retroactive rule, we permitted Hahn to file a second-or-successive § 2255 motion raising his *Dimaya* claim. He then filed a pro se motion in the district court challenging his convictions on Counts 14–16 as unconstitutional. A magistrate judge recommended the district court deny the motion. Hahn objected to the magistrate's findings on several issues but did not object to its legal conclusions that: (1) the "§ 2255 motion was not timely filed" in accordance with the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996; (2) Hahn was not entitled to equitable tolling of his untimely motion; and (3) Hahn had "procedurally defaulted his *Dimaya*-based claim" by not raising it previously. R., Vol. I at 243.

The district court accepted Hahn's concession that his motion was untimely but pressed ahead. It then determined Hahn had established cause for his procedural default because the Supreme Court had not decided *Dimaya* when he brought his direct appeal and first § 2255 motion. And it found Hahn would suffer actual

4

prejudice if it enforced the procedural bar without considering his *Dimaya* claim's merits. So it excused the procedural default. Turning to the merits, the district court held Hahn was not entitled to relief because his 2001 sentencing court "would have more likely than not found § 30-9-13 a crime of violence under § 16's elements clause" rather than the residual clause. R., Vol. I at 251. To reach that conclusion, the district court surveyed the relevant legal background and found that *United States v. Vigil*, 334 F.3d 1215 (10th Cir. 2003), and *United States v. Pierce*, 278 F.3d 282 (4th Cir. 2002), established the 2001 court could have categorized § 30-9-13 under § 16's elements clause.

Despite having already excused Hahn's procedural default based on a showing of cause and prejudice, the district court addressed his alternative theory that his default was excusable by a showing of actual innocence. The district court rejected that argument, finding Hahn could not demonstrate actual innocence of his § 841 charges because his claim was based on a change in the law, rather than newly discovered facts. It then explained that "for the actual innocence gateway to afford relief, [Hahn] would have to show that he is actually innocent of charges equal or more serious to those that the government dismissed as part of the plea agreement." R., Vol. I at 255 (citing *Bousley v. United States*, 523 U.S. 614, 624 (1998)). And it rejected Hahn's argument that his § 841 convictions were more serious than the dismissed sexual-exploitation charges. In doing so, the court explained § 841 carried a statutory maximum sentence of twenty years' imprisonment with no mandatory minimum, while the sexual-exploitation charges carried up to twenty years'

5

imprisonment and a mandatory minimum of ten years' imprisonment. It therefore held that the sexual-exploitation charges were more serious than the § 841 convictions and Hahn's failure to argue that he was actually innocent of them doomed his claim to a procedural exception based on actual innocence.

The court entered judgment dismissing Hahn's § 2255 motion with prejudice and denying a COA. Hahn moved to alter or amend the judgment, and the court denied the motion. He then filed an application for a COA with this court. We granted his request, finding reasonable jurists could debate three questions: (1) whether the invalidation of an offense under a new constitutional rule constitutes a showing of actual innocence regarding that offense; (2) whether, to qualify for the miscarriage-of-justice exception to AEDPA's statute of limitations, Hahn must show actual innocence of equally serious charges the government dismissed in exchange for his plea, and (3) regarding the merits, whether the sentencing court just as likely relied on § 16's elements clause as its residual clause to categorize criminal sexual contact of a minor under § 30-9-13 as a crime of violence.

## II.    Discussion

Hahn argues the district court erred in dismissing his § 2255 motion for failing to rely on a true *Dimaya* claim and for falling outside AEDPA's one-year limitations period. First, he says the district court incorrectly determined that the sentencing court could have classified New Mexico's criminal-sexual-contact-of-a-minor statute as a crime of violence based on § 16's elements clause. He contends that a review of our caselaw at the time of his sentencing shows that the sentencing court must have

6

relied on § 16's now-invalid residual clause to make that classification. And, as a result, his § 841 convictions relying on that classification must be vacated.

Second, he argues that, though his motion is untimely, he is entitled to the miscarriage-of-justice exception to AEDPA's statute of limitations. He claims the district court's refusal to apply the exception hinged on multiple errors involving: (1) the standard for actual innocence as applied to a statute that is later declared void-for-vagueness, (2) the court's assessment of the relative seriousness of his convictions and the dismissed charges, and (3) the requirements for plea bargainers set out in *Bousley v. United States*.

We "review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." *United States v. Miller*, 868 F.3d 1182, 1186 (10th Cir. 2017) (quoting *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998)). "When, as here, 'the district court does not hold an evidentiary hearing, but rather denies the motion as a matter of law upon an uncontested trial record, our review is strictly de novo." *United States v. Bowen*, 936 F.3d 1091, 1097 (10th Cir. 2019) (quoting *United States v. Barrett*, 797 F.3d 1207, 1213 (10th Cir. 2015)).

### A.    *Section 2255(h) Gatekeeping Requirements*

Before we reach Hahn's arguments, we must address a threshold jurisdictional issue. Because this is not Hahn's first § 2255 motion, he must satisfy AEDPA's requirements for second-or-successive motions. 28 U.S.C. § 2255(h). Thus, Hahn's motion must pass through two jurisdictional gates before a court can consider its merits:

7

> (1) a prima facie showing to the court of appeals that the motion satisfies the requirements of § 2255(h), defined as a sufficient showing of possible merit to warrant a fuller exploration by the district court, and (2) a determination by the district court that the motion does, in fact, satisfy those requirements.

*United States v. Murphy*, 887 F.3d 1064, 1068 (10th Cir. 2018) (citation modified).

Relevant here, § 2255(h)(2) requires that Hahn's claim rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."[1]

Hahn traversed the first gate when we authorized his motion based on the government's agreement with the § 2255(h)(2) argument in his request. The district court noted our authorization order but did not address whether Hahn's motion does, in fact, meet § 2255's demands. To ensure that the district court had subject matter jurisdiction, we requested supplemental briefing on the issue. We now consider each § 2255 factor and determine that Hahn's motion satisfies the gatekeeping requirements.

### 1.    New Rule of Constitutional Law

Hahn has shown that *Dimaya* announced a new rule of constitutional law. "A rule is new unless it was '*dictated* by precedent existing at the time the defendant's conviction became final.'" *Edwards v. Vannoy*, 593 U.S. 255, 265 (2021) (quoting

---

[1] Unlike its companion statute governing habeas petitions challenging state court convictions, § 2244(b)(2)(A), § 2255(h)(2) uses the word "contain" instead of the phrase "relies on." But we have explained that "[a] motion 'contains' a new rule of constitutional law, as required by § 2255(h)(2), if the claim for which authorization is sought 'relies on' the new rule." *Murphy*, 887 F.3d at 1067 (quoting *In re Encinias*, 821 F.3d 1224, 1225 n.2 (10th Cir. 2016)).

8

*Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion)). "In other words, a rule is new unless, at the time the conviction became final, the rule was already 'apparent to all reasonable jurists.'" *Id.* (quoting *Lambrix v. Singletary*, 520 U.S. 518, 528 (1997)).

We conclude that *Dimaya* was not dictated by precedent when Hahn's conviction became final in 2004. The only case predating *Dimaya* that might have dictated its outcome is *Johnson v. United States*, 576 U.S. 591 (2015). Indeed, the Court described *Dimaya* as a "straightforward application" of *Johnson*. *Dimaya*, 584 U.S. at 157. But as the Fifth Circuit has noted, the Supreme Court decided *Dimaya* over a four-justice dissent, indicating that *Dimaya*'s rule "was open to reasonable debate and not 'dictated by' *Johnson*." *United States v. Vargas-Soto*, 35 F.4th 979, 988 (5th Cir. 2022). As a result, we have no trouble determining that *Dimaya* announced a new rule of constitutional law.

### 2.    *Made Retroactive by the Supreme Court*

Hahn also must show that the Supreme Court has made *Dimaya*'s rule retroactive on collateral review. This issue is closer because the Supreme Court has never stated explicitly that *Dimaya* applies on collateral review, but our precedent dictates that result.

"[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001). The holding can either come in a single case, or through a combination of holdings that "necessarily dictate retroactivity of the new rule." *In re Mullins*, 942 F.3d 975,

9

977 (10th Cir. 2019) (quoting *Tyler*, 533 U.S. at 666). While the Court has never explicitly held that *Dimaya* is retroactive on collateral review, Hahn argues that the conclusion is compelled by the combined holdings of *Johnson*, *Welch v. United States*, 578 U.S. 120 (2016), and *Dimaya*. The government agrees.[2]

*Johnson* held that the residual clause in the Armed Career Criminal Act's (ACCA) definition of "violent felony" was unconstitutionally vague. 576 U.S. at 606. A year later, *Welch* held that *Johnson* stated a new rule that applied retroactively because it narrowed the substantive reach of the ACCA. *Welch*, 578 U.S. at 130. Two years after the Court decided *Welch*, *Dimaya* applied *Johnson*'s rule to hold that the term "crime of violence" in 18 U.S.C. § 16(b) was unconstitutionally vague, thereby changing the substantive reach of that statute. According to Hahn and the government, since *Dimaya* limited the reach of § 16 in the same manner that *Johnson* limited the ACCA, *Welch* made *Dimaya* retroactive even though it was decided before *Dimaya*.

Our court applied an almost identical analysis in 2019 to hold that the Supreme Court had made the rule of *United States v. Davis*, 588 U.S. 445 (2019), retroactive

---

[2] Since we have described AEDPA's gatekeeping requirements as jurisdictional, we must decide the issue despite the government's concession. *See Case v. Hatch*, 731 F.3d 1015, 1027 (10th Cir. 2013) ("Section 2244's gate-keeping requirements are jurisdictional in nature, and must be considered prior to the merits of a § 2254 petition."); *Murphy*, 887 F.3d at 1067–68 (extending *Case*'s gatekeeping requirements to § 2255 motions); *see also United States v. Harrison*, 785 F. App'x 534, 536 (10th Cir. 2019) (unpublished) ("Importantly, the gatekeeping requirements of section 2255 for bringing a second or successive habeas motion are jurisdictional." (citing *Case*, 731 F.3d at 1027)).

on collateral review. *Davis* held that the residual clause in 18 U.S.C. § 924(c)(3)'s definition of a "crime of violence" was unconstitutionally vague. 588 U.S. at 470. And in *In re Mullins*, we applied *Tyler*'s multiple-cases approach to explain that the Court had made *Davis* retroactive through a combination of its holdings in *Davis* and *Welch*. We determined that "[b]ecause *Davis* has the same limiting effect on the range of conduct or class of people punishable under § 924(c) that *Johnson* has with respect to the ACCA, *Welch* dictates that *Davis*—like *Johnson*—'announced a substantive rule that has retroactive effect in cases on collateral review.'" *In re Mullins*, 942 F.3d at 979 (quoting *Welch*, 578 U.S. at 135). Thus, "[t]he Court's holdings in *Welch* and *Davis* 'logically permit no other conclusion than that the rule [in *Davis*] is retroactive." *Id.* (second alteration in original) (quoting *Tyler*, 533 U.S. at 669 (O'Connor, J., concurring)).

Whether our application of *Tyler* in *In re Mullins* was correct is debatable. After all, the *Tyler* majority said that multiple cases can make a rule retroactive only if they "necessarily dictate" that outcome. 533 U.S. at 666. With such sparse guidance, we relied on Justice O'Connor's solo concurrence to flesh out the reasoning that ultimately led us to conclude that *Davis* had been made retroactive. *See In re Mullins*, 942 F.3d at 977–78. We do not typically give such strong weight to concurrences, and whether Justice O'Connor's approach is the correct way to interpret the *Tyler* majority's statement about multiple cases is unclear. And there is some reason to doubt our determination that the interplay between *Welch* and *Davis*

11

satisfies the retroactivity standard. *See Davis*, 588 U.S. at 501 (Kavanaugh, J., dissenting) ("[W]ho knows whether the ruling will be retroactive?").

Even so, our precedent commands a similar outcome here. *In re Mullins* adopted the *Tyler* concurrence's approach as our circuit's law. Just as *Johnson* limited the reach of the ACCA and *Davis* constrained that of § 924(c)(3), *Dimaya* curbed the scope of § 16. We have said that the Supreme Court has made rules of this type retroactive through its decision in *Welch*. *See In re Mullins*, 942 F.3d at 979. And we see no principled distinction between *Davis* and *Dimaya* on retroactivity. *Cf. Vargas-Soto*, 35 F.4th at 989 ("For retroactivity under § 2255(h)(2), there is no principled distinction between *Dimaya* and *Davis*." (citation modified)). We therefore conclude that the Supreme Court has made *Dimaya* retroactive to cases on collateral review.

### 3.    *Previously Unavailable*

Hahn also must demonstrate that *Dimaya*'s rule was previously unavailable to him. Our court has not identified the proper temporal reference for determining whether a new rule was previously unavailable. Several circuits have stated that courts should look to the time frame of the defendant's previous § 2255 motion or habeas petition. *See, e.g., In re Hill*, 113 F.3d 181, 182–83 (11th Cir. 1997). But others have held that "previously" refers to the last "federal proceeding—including an authorization motion—challenging [the defendant's] conviction." *In re Thomas*, 988 F.3d 783, 790 (4th Cir. 2021) (citing *In re Williams*, 364 F.3d 235, 239 (4th Cir. 2004)).

We need not decide the issue today because Hahn's motion satisfies either standard. Before he filed his current motion, Hahn's most recent proceeding in this case was our 2015 dismissal of his appeal of an order regarding an earlier § 2255 motion. Since *Dimaya* was decided in 2018, its rule was unavailable to Hahn during that most recent proceeding.

### 4.      *Reliance on the Rule*

*Finally*, Hahn must show that his motion relies on *Dimaya*'s new rule. Our residual-clause cases establish that a motion relies on a new rule only if the sentencing court's determination "rest[ed] on the residual clause."[3] *Murphy*, 887 F.3d at 1069; *see also United States v. Cooper*, 159 F.4th 768, 772 (10th Cir. 2025). To convict Hahn based on his guilty plea to the § 841 charges, the sentencing court determined that the requisite underlying crime of violence was criminal-sexual-contact-of-a-minor under New Mexico law, N.M. Stat. Ann. § 30-9-13 (West 1998). So to prove that his motion relies on *Dimaya*, Hahn must demonstrate it is more likely than not that the sentencing court classified the New Mexico criminal-sexual-contact-of-a-minor statute as a crime of violence under § 16's *residual clause* rather than its elements clause. *See United States v. Washington*, 890 F.3d 891, 896 (10th

---

[3] This strict rule of reliance smuggles the merits of residual-clause claims into the gatekeeping analysis. By determining that a favorable Supreme Court ruling invoked by the defendant in fact controls his case, a court practically determines the merits as well. For example, in deciding that the sentencing court relied on § 16(b)'s residual clause, we settle a substantial portion of Hahn's *Dimaya* claim. The only issue left behind on the merits is an inquiry into whether the *Dimaya* error was harmless. *See United States v. Lewis*, 904 F.3d 867, 873 (10th Cir. 2018) (articulating the harmless error standard in the event of an established *Johnson* error).

Cir. 2018) (applying this standard to an analogous *Johnson* claim). The district court concluded that Hahn could not do so because, considering the relevant background legal environment at the time of sentencing, the sentencing court "would have more likely than not found § 30-9-13 a crime of violence under § 16's elements clause." R., Vol. I at 251. We disagree.

Hahn may meet his burden to show the district court relied on the residual clause in two ways. First, he may point to evidence in the sentencing record that shows the sentencing court relied on the residual clause. *United States v. Copeland*, 921 F.3d 1233, 1242 (10th Cir. 2019). But Hahn and the government agree that the record affords no clarity.

Hahn's second pathway is to show that based on "the 'relevant background legal environment' at the time of [his] sentencing . . . the district court would have needed to rely on the residual clause." *Id.* (quoting *United States v. Driscoll*, 892 F.3d 1127, 1132 (10th Cir. 2018)). "[T]he relevant background legal environment is, so to speak, a 'snapshot' of what the controlling law was at the time of sentencing and does not take into account post-sentencing decisions that may have clarified or corrected pre-sentencing decisions." *Id.* at 1243 (alteration in original) (quoting *United States v. Snyder*, 871 F.3d 1122, 1129 (10th Cir. 2017)). It includes "case law (1) holding that particular offenses qualify as violent felonies under specific [statutory] clauses and (2) instructing how to determine whether an offense qualifies." *Id.* (citing *Snyder*, 871 F.3d at 1129–30).

14

Hahn and the government agree that the sentencing court would have employed the categorical approach to evaluate § 30-9-13's relationship to § 16. Under that approach, "the facts of a given case are irrelevant." *Borden v. United States*, 593 U.S. 420, 424 (2021). "The focus is instead on whether the elements of the statute of conviction meet the federal standard." *Id.* Under § 16's elements clause, a crime of violence involves the "use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). "If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard[.]" *Borden*, 593 U.S. at 424.

Hahn argues the version of § 30-9-13 in effect at the time of his convictions does not categorically qualify under § 16's elements clause because it criminalizes, among other things, "the unlawful and intentional touching of *or* applying force to the intimate parts of a minor . . . ." N.M. Stat. Ann. § 30-9-13(A)(1) (West 1998) (emphasis added). He says § 30-9-13's "or" creates a distinction between "touching" and "force," and since § 16(a) requires "force," § 30-9-13 is not a categorical fit. We agree. A contrary reading that equates touching and force would make one of the terms surplusage. So the sentencing court, mindful of the requirement that courts give meaning and effect to each term in a statute, *Regents of Univ. of N.M. v. N.M. Fed'n of Tchrs.*, 962 P.2d 1236, 1246 (N.M. 1998), must have recognized that "touching" is different from, and falls short of, "force." The sentencing court

15

therefore could not have classified § 30-9-13 categorically as a crime of violence under § 16's elements clause.

Our conclusion is supported by our caselaw at the time of Hahn's sentencing. While none of our cases had addressed § 30-9-13 directly, in the years predating Hahn's conviction our court had classified analogous statutes as crimes of violence under § 16's residual clause. In 1993, we addressed a Utah statute that criminalized "touch[ing] the [intimate parts] of any child . . . or otherwise tak[ing] indecent liberties with a child, or caus[ing] a child to take indecent liberties with the actor or another . . . ." Utah Code Ann. § 76-5-404.1(1) (1990). Despite the statute's use of "touches," we determined the offense "d[id] not involve physical force as an element of the crime." *United States v. Reyes-Castro*, 13 F.3d 377, 379 (10th Cir. 1993). Instead, we classified the offense as a crime of violence under § 16's residual clause because, under Utah law, children under fourteen could not consent, and when a crime "involves a non-consensual act upon another person, there is a substantial risk that physical force may be used in the course of committing the offense." *Id.* Thus, in *Reyes-Castro*, we declined to classify an analogous criminal-sexual-contact-of-a-minor statute as a crime of violence under § 16(a) and placed it within the ambit of § 16(b).

In 1998, we cited *Reyes-Castro* as persuasive authority to hold that the definition of a crime of violence in § 4B1.2 of the Sentencing Guidelines covered sexual offenses involving a minor. *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998). At the time, § 4B1.2 included a residual clause defining

16

a crime of violence as an act which "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S. Sent'g Guidelines Manual § 4B1.2(a)(2) (U.S. Sent'g Comm'n 1997). It also contained an elements clause that mirrored the definition in § 16(a). The government argued § 4B1.2's definition applied to the defendant's prior acts based on his having "intentionally touched" a minor victim's intimate parts. *Coronado-Cervantes*, 154 F.3d at 1243. The district court determined that the offense fell under § 4B1.2 even though "there was nothing in the elements of the offense, in the plea agreement, or in the information that alluded to the use of force." *Id.* To do so, it relied on the residual clause. We affirmed. Despite some differences in language between § 16(b) and § 4B1.2's residual clause, we found the texts similar enough that the reasoning of *Reyes-Castro* applied. So we held that a criminal-sexual-abuse offense based on "intentional[] touch[ing]" fit within § 4B.2's residual clause.

Finally, in June 2000, we rejected a double-counting challenge to a defendant's sentence for sexual abuse of a minor. *United States v. Reyes Pena*, 216 F.3d 1204, 1211 (10th Cir. 2000). The defendant argued his sentence was twice enhanced for the same use of force under U.S.S.G. § 2A3.1(b)(2)(A) (crimes involving a victim under 12) and U.S.S.G. § 2A3.1(b)(1) (violent crimes generally). He claimed "the element of force is implicit in any offense involving a child under the age of twelve years," so he could not receive an enhancement under both sections. *Reyes Pena*, 216 F.3d at 1210. We rejected that argument and explained that "both *Reyes-Castro* and *Coronado-Cervantes* explicitly recognize that it is the

serious risk of physical force, not the actual presence of such force that determines whether or not a certain act constitutes a 'crime of violence.'" *Id.* In doing so, we clarified that child sex crimes generally fell under crime-of-violence residual clauses, like § 16(b). *See id.* at 1211 ("The force enhancement is not mandatory [in a case involving sexual abuse of a child]—not because it is already contemplated by enhancements for the youth of the victim—but rather because unlike adult rape, it may not always be appropriate given the factual predicates of the crime.").

The government counters that in *United States v. Vigil*, 334 F.3d 1215 (10th Cir. 2003), our court classified Colorado's aggravated-incest statute as a crime of violence under U.S.S.G. § 4B1.2's elements clause. So, it says, Hahn's sentencing court could likewise have classified § 30-9-13 as a crime of violence under § 16's elements clause. That theory is flawed because *Vigil* was decided two years *after* Hahn's sentencing and therefore did not constitute a part of the sentencing court's relevant legal background. *See Snyder*, 871 F.3d at 1129 ("[T]he relevant background legal environment . . . does not take into account post-sentencing decisions that may have clarified or corrected pre-sentencing decisions.").

The government tries to get around that obstacle by suggesting that, even if *Vigil* were not a part of the legal background, the district court's reliance on an element's clause in that case shows that Hahn's sentencing court *could* similarly have classified § 30-9-13 under § 16's elements clause. That is a clever attempt to bring *Vigil* back into consideration, but it still fails. For one, *Vigil* "base[d] [its] holding primarily on the 'serious threat of physical injury' analysis under the [residual

clause] of section 4B1.2." 334 F.3d at 1219. Further, the aggravated-incest statute in *Vigil* is not analogous to the more general provisions of § 30-9-13. The district court in *Vigil* explained that Colorado's aggravated-incest statute could satisfy § 4B1.2's elements clause because it "contain[ed] as an element the threatened use of physical force." *Id.* While the statute did not "expressly require the threatened use of physical force," the court determined "that the requisite threat of force is implied whenever a *parent* inflicts [incest] on his or her child." *Id.* (emphasis added). We agreed, and quoting a Fourth Circuit case, we viewed incest as occurring in "a unique situation of dominance and control" based on "the youth and vulnerability of children, coupled with the power inherent in a parent's position of authority." *Id.* at 1220 (quoting *United States v. Pierce*, 278 F.3d 282, 290 (4th Cir. 2002)). As a result, we affirmed the district court's determination that *incest* "permits the inference of a threat of force," bringing it within § 4B1.2's elements clause. *Id.* But since § 30-9-13 covers sexual abuse of minors in more than the unique circumstances of incest, *Vigil* does not help the government.

Finally, the government argues that *Vigil* "found support in *United States v. Passi*, 62 F.3d 1278 (10th Cir. 1995)," which predates Hahn's sentencing and is therefore instructive. Appellee's Resp. to Appellant's Appl. for a Certificate of Appealability 30. That is so, but *Vigil* relied on *Passi* only for the general proposition that *aggravated incest*, not all sexual abuse of a minor, can qualify as a crime of violence. More to the point, *Passi*'s classification of Kansas's aggravated-incest statute as a crime of violence under the Sentencing Guidelines was based on

19

our reasoning in *Reyes-Castro* that "when an older person attempts to sexually touch a child under the age of fourteen, there is always a *substantial risk* that physical force will be used to ensure the child's compliance." *Passi*, 62 F.3d at 1281 (emphasis added) (quoting *Reyes-Castro*, 13 F.3d at 379). And the "substantial risk" of physical force is language from § 16's residual clause. As a result, *Passi* itself does not suggest that the more general provisions of § 30-9-13 might fall within § 16's elements clause. And even if *Vigil*'s later gloss on *Passi* might suggest otherwise, our assessment of the background legal environment at Hahn's sentencing "does not take into account" that "clarifi[cation] or correct[ion]." *Snyder*, 871 F.3d at 1129.

Thus, *Vigil* does not persuade us that Hahn's sentencing court would have departed from our on-point precedent in *Reyes-Castro* without any suggestion in the sentencing record that it was doing so.[4] We conclude that, at the time of Hahn's sentencing, rules of interpretation and our circuit's residual-clause precedents would have required the sentencing court to classify § 30-9-13 as a crime of violence under § 16's now-invalid residual clause. Hahn's motion therefore relies on *Dimaya*'s rule.

### 5.    *Conclusion*

Hahn has met his burden to show that his § 2255 motion relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme

---

[4] We find additional support for our inference here in the *Vigil* district court's recognition that it was breaking new ground that required explanation. *See Vigil*, 334 F.3d at 1219 (discussing the district court's explanation for holding that Colorado's aggravated-incest law qualified as a crime of violence under § 4B1.2's elements clause).

Court, that was previously unavailable." 28 U.S.C. § 2255. The district court

therefore had jurisdiction to consider his motion, and we have jurisdiction to consider

his appeal.

### B.     Timeliness of Hahn's Motion

Hahn must still show that his motion is not barred by AEDPA's statute of

limitations. While he concedes that his motion is untimely, he argues he is entitled to

the miscarriage-of-justice exception to the time-bar. We hold that Hahn's failure to

prove he is actually innocent of the equally serious or more serious charges the

government dismissed in exchange for his plea forecloses that relief. As a result,

Hahn's motion cannot go forward.[5]

### 1.     Statute of Limitations and Equitable Tolling

AEDPA imposes a one-year limitation period on § 2255 motions. 28 U.S.C.

§ 2255(f). Hahn concedes that his motion is late because *Dimaya* was decided in

2018 and he did not file until 2021. *See id.* § 2255(f)(3). But he argues his motion

should go forward based on an exception to the time-bar.

We recognize two equitable exceptions to AEDPA's statute of limitations:

(1) equitable tolling, *United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir.

2008), and (2) miscarriage of justice, *Doe v. Jones*, 762 F.3d 1174, 1182 (10th Cir.

2014). Hahn's motion argued that he could receive an exception under either theory.

---

[5] Along with timeliness, the district court considered whether Hahn had procedurally defaulted his claim by not raising it in an earlier habeas motion. Hahn conceded default but successfully argued for an excuse based on cause and prejudice. The government has not contested the issue on appeal, so we do not consider it here.

But after the magistrate judge recommended against a finding of equitable tolling, Hahn conceded that he was not entitled to it. So Hahn's only remaining route around the statute of limitations is through the miscarriage-of-justice exception.

### 2.    *Miscarriage-of-Justice Exception – Actual Innocence*

"[A] 'credible showing of actual innocence' provides an outright equitable *exception* to AEDPA's statute of limitations." *Doe*, 762 F.3d at 1182 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013)). Actual innocence requires a showing of factual innocence rather than "mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Despite the name, a movant must prove only that "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995). When the movant was convicted based on a plea bargain, his showing of actual innocence must go beyond the challenged convictions and extend to any "more serious charges" the government dismissed "in the course of plea bargaining." *Bousley*, 523 U.S. at 624. Under *Bousley*, Hahn must show he is actually innocent of both more serious and *equally serious* charges forgone in exchange for his plea. We address the challenged charges of conviction and the forgone charges in turn.

### a.    *Challenged Charges of Conviction*

As we have discussed, Hahn has successfully challenged his § 841 charges based on *Dimaya*'s invalidation of § 16's residual clause. Now he argues that success on his *Dimaya* claim means he is actually innocent of the § 841 charges because no reasonable jury could convict him of that crime without the underlying

22

crime of violence. We recently acknowledged, in the context of a *Davis* claim, that "neither our circuit nor the Supreme Court has definitively resolved whether a claim of actual innocence based on a new statutory interpretation—rather than such a claim based on new evidence—can overcome § 2255's statute of limitations." *Bowen*, 936 F.3d at 1097 n.2. But here Hahn and the government agree that success on the *Dimaya* claims would mean that Hahn is actually innocent of his § 841 convictions. Given that consensus, and our decision on Hahn's *Dimaya* claim, we assume without deciding that Hahn has shown actual innocence of those charges. *Cf. id.* at 1097.

### b.    *Equally or More Serious Charges*

Hahn and the government also agree that he must at least show that he is actually innocent of any more serious charges the government dismissed in exchange for his plea. But they disagree over the relative seriousness of Hahn's § 841 convictions and two charges for sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) that the government dismissed to secure his plea. The government maintains that the § 2251(a) charges are more serious than the § 841 convictions, or, at worst for its case, equally serious to them, and that Hahn's failure to argue that he is actually innocent of them dooms his request for the miscarriage-of-justice exception. In reply, Hahn says the § 2251(a) charges are *less* serious and are therefore irrelevant. And he argues that even if the § 2251(a) charges were just as serious as the § 841 convictions, *Bousley* only requires proof of actual innocence of *more* serious charges.

As a threshold matter, we conclude that the § 2251(a) charges are at least equally as serious as Hahn's § 841 convictions. Hahn and the government base their assessments of seriousness on the statutory punishments.[6] At the time of Hahn's sentencing, § 2251 provided that a violator "shall be fined under this title or imprisoned not less than 10 years nor more than 20 years, and both." 18 U.S.C. § 2251(d) (1998) (effective 1998–2003). And § 841 stated that a violator "shall be imprisoned not more than 20 years and fined in accordance with Title 18." 21 U.S.C. § 841(b)(7)(A) (2000) (effective 2000–2002). Hahn argues that § 2251 is the less

---

[6] Hahn also advances a theory of seriousness based on the United States Sentencing Guidelines. This is an argument he never presented to the district court, and under our preservation rules, we rarely consider an argument that a party did not raise below. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

That said, Hahn reminds us that he was unrepresented in the district court proceedings and invokes our solicitous posture towards pro se litigants to argue that he did preserve his Guidelines theory. But even casting a generous eye on the record, we determine Hahn forfeited the argument. Hahn's district court briefing never mentions the theory; he only argued seriousness based on the statutory penalties. Nor did he challenge the district court's use of statutory penalties to assess seriousness in his request to this court for a COA. In its response to Hahn's COA brief, the government noted that some courts have looked to the Guidelines to determine seriousness, but it argued Hahn had not presented that theory. Appellee's Resp. to Appellant's Appl. for a Certificate of Appealability 37 n.29. Despite this, Hahn's reply brief again did not challenge the district court's approach or raise the Guidelines argument. Now, he argues he preserved the issue through a citation to *United States v. Caso*, 723 F.3d 215 (D.C. Cir. 2013), in his district court papers. But a single citation to a case that mentions the theory is not enough to preserve the issue. Especially when the citation is to a different part of the case and is made to support an unrelated proposition. Hahn cites *Caso* as part of his argument about the proper interpretation of *Bousley*—in fact he cites it as a counterexample to his position on that issue—not in his argument that all the forgone charges were less serious than the § 841 convictions. *See* R., Vol. 1 at 104. Under even the most lenient standard of preservation, Hahn has not done enough.

serious charge because it technically allows imposition of a fine in lieu of prison time.

The government says this is nonsensical based on the gravity of child sexual abuse, and notwithstanding a possible drafting error in the statute, neither Hahn, the government, nor the sentencing court seriously considered such inconsequential punishment. And it points out that once Congress realized the statute could be misread in this way, it amended the text to clarify that a violator "shall be fined under this title *and* imprisoned not less than 15 years nor more than 30 years." 18 U.S.C. § 2251(e) (2003) (emphasis added) (effective 2003–2006). Finally, the government argues that even if Hahn's reading of § 2251 is correct, § 841 also lacks a mandatory minimum prison term, meaning it too is technically punishable by a mere fine. Hahn does not dispute that reading of § 841.

We agree with Hahn that § 2251's text allowed the sentencing court to impose a fine without any prison time. Notwithstanding the strangeness of that result, we are bound by the statutory text, *see United States v. Dep't of Health & Env't*, 162 F.4th 1238, 1244 (10th Cir. 2025), and the use of "or" in the 2000-version indicates the court had such discretion. That said, Hahn does not dispute that his § 841 offenses were also punishable by a fine and no prison time. The upshot is that both offenses carried minimum punishments of a fine (of undefined amount) and maximum punishments of twenty years' imprisonment. So based on the parties' theory of seriousness, the § 2251(a) charges were at least as serious as the § 841 convictions.

The success or failure of Hahn's claim to the miscarriage-of-justice exception therefore hinges on whether the Supreme Court's decision in *Bousley v. United States* requires him to prove actual innocence of equally serious charges dismissed as part of his plea deal. We think it does.

*Bousley* instructs that "[i]n cases where the Government has forgone *more serious* charges in the course of plea bargaining, [a movant's] showing of actual innocence must also extend to those charges." 523 U.S. at 624 (emphasis added). So how we treat more serious forgone charges is clear. And while *Bousley* does not tell us how to address forgone charges that are less serious than the now-invalid convictions, it suggests we should not hold them against the movant. As the D.C. Circuit made the point, "we should not require a person to spend 30 years in prison on an erroneous murder conviction because he was guilty of an uncharged theft offense that would carry a sentence of one year." *United States v. Caso*, 723 F.3d 215, 223 (D.C. Cir. 2013). Or as the Sixth Circuit said, echoing *Caso*, "if it is 'fair' to hold the parties to their bargain to dismiss some charges in exchange for a 'lesser penalty,' it is 'unfair' to deny relief when the dismissed charges would lead to less prison time for the defendant." *Witham v. United States*, 97 F.4th 1027, 1032 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1438 (2025) (quoting *Caso*, 723 F.3d at 223).

That leaves open the question of how to address forgone charges that are *equally* serious to the charge of conviction—the situation relevant to Hahn's case. As with less serious charges, *Bousley* does not give explicit guidance on how to proceed. But also akin to less serious charges, *Bousley*'s reasoning implies the

26

answer. We have recognized that the "holding in *Bousley* prevents a petitioner from artificially narrowing the scope of the actual innocence inquiry through plea bargaining." *Taylor v. Powell*, 7 F.4th 920, 933 (10th Cir. 2021). So the key question is whether excusing a movant from showing actual innocence of equally serious charges would narrow the inquiry and gift the movant a windfall. We believe it would. As the Seventh Circuit has observed, if a forgone charge was as serious as the one pleaded to, the movant "would have gained little or nothing had the government and he realized that the charge to which he pleaded guilty was unsound." *Lewis v. Peterson*, 329 F.3d 934, 937 (7th Cir. 2003). Under those circumstances, the parties "would have switched the plea to the sound charge." *Id.* And since the substituted charge would be just as serious, "the punishment would probably have been the same." *Id.* Further, the fairness problem identified by the D.C. Circuit is absent because when charges carry equal punishments there is no reason to believe that the movant was penalized "more severely" by "plead[ing] guilty to the count later learned to be invalid." *Id.*

The Sixth Circuit recently came to the same conclusion and further explained how a contrary ruling would undercut *Bousley*. As Chief Judge Sutton noted, when a defendant accepts a plea bargain "he makes a calculation of risk that the benefits of the plea bargain (a shorter sentence and fewer charges) outweigh the burdens (giving up the right to a trial by jury and the possibility of acquittal)." *Witham*, 97 F.4th at 1033. But "'allowing a petitioner to raise a [time-barred] challenge to a sentence he bargained for, while escaping punishment for dismissed counts that he actually

27

committed,' would flip the risk calculation on its head." *Id.* (quoting *Peveler v. United States*, 269 F.3d 693, 701 (6th Cir. 2001)).  Compared to a defendant who chose to go to trial, "the plea bargainer would face both a shorter sentence at the outset and a similar chance of postconviction relief down the line." *Id.*  That regime would convert *Bousley*'s limited allowance for collateral attacks on pleas to avoid injustice into a "windfall" for the defendant.  *Id.* (quoting *Lewis*, 329 F.3d at 936).

We find these explanations of *Bousley*'s rationale persuasive.  We therefore join the Sixth and Seventh Circuits in holding that *Bousley*'s rule covers equally serious forgone charges.[7]  So if a movant has accepted a plea bargain he cannot qualify for the miscarriage-of-justice exception to AEDPA's statute of limitations "unless he can show that he is actually innocent of equally or more serious charges dismissed as part of the bargain." *Witham*, 97 F.4th at 1034.  Hahn's plea agreement included the dismissal of two § 2251 charges that are as serious as his § 841 convictions, and he has not shown actual innocence of those charges.  As a result, he is not entitled to the miscarriage-of-justice exception, and we cannot excuse his motion's untimeliness.

Hahn's counterarguments to our reading of *Bousley* are unpersuasive.  First, he claims the circuits are deeply split on the issue and encourages us to join those courts that have interpreted *Bousley* as applying only to more serious charges.  But we do

---

[7] The Second Circuit has applied the same rule in several unpublished summary dispositions but has never adopted it in a precedential opinion. *See Kinley v. Artus*, 571 F. App'x 30, 31 (2d Cir. 2014); *Lyons v. LaClaire*, 571 F. App'x 34, 35 (2d Cir. 2014).

not discern a deep split.  The Eighth Circuit, in *United States v. Johnson*, 260 F.3d 919 (8th Cir. 2001), is the only federal appeals court that has squarely addressed the issue and come down on the opposite side of the Sixth and Seventh Circuits.[8] *Johnson*, which predates both *Lewis* and *Witham*, applied a literal reading of *Bousley*'s language to adopt a more-serious-charges-only standard.  And it did so without any exploration of *Bousley*'s reasoning.  Hahn argues that his reading is nonetheless correct, and that "in deciding *Bousley*, the Supreme Court said what it meant and meant what it said," Aplt. Supp. Opening Br. 35.  So, he contends, the rule we adopt today is an improper extension or expansion of *Bousley*'s rule.  If this were an issue of statutory interpretation, that argument might be powerful.  But "we don't read precedents like statutes."  *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 819 (6th Cir. 2015).  Rather, as a lower court applying Supreme Court precedent, we are bound by the holding and reasoning of the Court's decision.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996); Bryan A. Garner et al., *The Law of Judicial*

---

[8] Hahn lists the Third, Fourth, Fifth, Eighth, and D.C. Circuits as taking, or supporting, his side.  But only the Eighth Circuit has explicitly limited *Bousley* to more serious charges.  *See United States v. Johnson*, 260 F.3d 919, 921 (8th Cir. 2001); *United States v. Lloyd*, 188 F.3d 184, 185 (3d Cir. 1999) (holding the movant "was not required to demonstrate actual innocence of a foregone [sic], less serious charge" without addressing equally serious charges); *United States v. Adams*, 814 F.3d 178 (4th Cir. 2016) (discussing *Bousley* without addressing whether it applies to equally serious charges); *United States v. Scruggs*, 714 F.3d 258, 265–66 (5th Cir. 2013) (avoiding the issue by deciding the forgone charges were more serious after aggregating their statutory punishments); *United States v. Caso*, 723 F.3d 215, 221–22 (D.C. Cir. 2013) (declining to reach the issue because the movant would succeed on either theory, but explaining in dicta that *Bousley*'s reasoning "supports requiring petitioners to show their innocence of equally serious charges").

*Precedent* 27 (2016). And as we have explained, *Bousley*'s rationale is best understood as embracing equally serious charges dismissed in exchange for a defendant's plea.

Next, Hahn argues that requiring him to prove innocence of equally serious dismissed charges is "inconsistent with the constitutional presumption of innocence." Aplt. Supp. Opening Br. 35. This concern overlooks that the presumption applies to criminal defendants, "not to convicted felons seeking to collaterally attack their convictions after failing to do so on direct appeal." *Witham*, 97 F.4th at 1037 (citing *Herrera v. Collins*, 506 U.S. 390, 399 (1993)). And, at any rate, even if the critique were valid it would "go[] to the correctness of *Bousley*, not to today's case." *Id.*

Finally, Hahn claims that Congress precluded courts from applying *Bousley* to equally serious charges when it enacted 18 U.S.C. § 3296 in 2002. Section 3296 allows the government to move to reinstate forgone charges if "the guilty plea was subsequently vacated on the motion of the defendant." 18 U.S.C. § 3296(a)(3). The statute corrected a loophole through which a criminal defendant could exploit statutes of limitations. By moving to vacate his guilty plea, a defendant could avoid reinstatement of a charge that the government timely filed but subsequently dismissed as part of the plea deal if that charge no longer fell within the limitations period. In Hahn's opinion, § 3296 also addresses *Bousley*'s concern about potential windfalls to defendants by "return[ing] the parties as close as possible to their pre-plea agreement positions." Aplt. Supp. Opening Br. 37 (alteration in original) (quoting *Ricks v. United States*, 921 F. Supp. 2d 501, 503 (E.D.N.C. 2013)). It does

so, he contends, by allowing the government to reinstate the dismissed charges after a defendant's successful § 2255 motion. Thus, § 3296 mitigated *Bousley*'s foundational concern, and Hahn argues courts should not extend "judge-made rules directed at policy concerns Congress addressed." *Id.* at 36.

We disagree. Hahn's arguments echo those rejected by the Sixth Circuit in *Witham*. *See* 97 F.4th at 1034–37. And while we agree with the Sixth Circuit's analysis and adopt its reasoning in full, we highlight the principal reasons that the arguments fail.

For one, "[i]n the two decades since the passage of § 3296, the Supreme Court has not held, said, or hinted that this statute cuts back on *Bousley* or for that matter overrules it." *Id.* at 1035. Without some indication from the Court that *Bousley* is no longer good law, we must follow it. And we note that Hahn cannot point to any federal circuit court opinion that adopts his view of the interplay between *Bousley* and § 3296.

Further, Hahn's argument that *Bousley* and § 3296 are directed at the same concern is unconvincing. *Bousley* applies only to the "extraordinary remedy" of postconviction relief, 523 U.S. at 621, whereas § 3296 operates after a defendant moves to vacate a plea agreement "for all manner of reasons," *Witham*, 97 F.4th at 1035. Since § 3296's language is not limited to postconviction relief, the government can likely move to reinstate charges under § 3296 after a defendant withdraws his plea before sentencing, *see* Fed. R. Crim. P. 11(d), or after a successful appeal, *see United States v. Moore*, 802 F. App'x 338, 342 (10th Cir. 2020).

31

But we have long recognized that postconviction relief implicates unique concerns about the "delicate balance between justice and finality" that are not present in earlier proceedings. *Taylor*, 7 F.4th at 926 (citing *House v. Bell*, 547 U.S. 518, 536 (2006)). The miscarriage-of-justice exception supports these objectives by "balanc[ing] the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest that arises in the extraordinary case." *Schlup*, 513 U.S. at 324. Speaking in this singular context, *Bousley* tells courts where that balance lies when a defendant attacks convictions based on his guilty plea. Section 3296 applies more broadly, and we have no indication that Congress had habeas in its sights when it passed that statute. And as *Witham* noted, "the reality that § 3296 applies across the board to more serious, equally serious, and less serious dismissed charges shows that § 3296 does not take on the concerns *Bousley* addressed." 97 F.4th at 1035. Thus, "[t]he possibility that the government might move to reinstate dismissed counts under § 3296 does not displace the imperative to enforce [AEDPA's statute of limitations] and the finality of criminal judgments." *Id.* We therefore reject Hahn's contention that § 3296 limited or overruled *Bousley*.

Our determination that *Bousley* and § 3296 are directed at different interests and different contexts also defeats Hahn's contention that our application of *Bousley* is an unreasonable expansion of judge-made law. Of course, habeas doctrine is a "combination of statutory law . . . and judge-made law." *Taylor*, 7 F.4th at 926. And when our choice is "between applying an equitable judge-made rule or a statute 'directly address[ing]' the issue" we will choose the statute. *Witham*, 97 F.4th at

32

1036 (alteration in original) (quoting *Lonchar v. Thomas*, 517 U.S. 314, 326 (1996)). But since § 3296 does not directly address the postconviction concerns dealt with in *Bousley*, we are not faced with a choice between the statute and equitable principles.

Even so, Hahn's argument about the expansion of judge-made rules gets things backwards. The Supreme Court has "frequent[ly] recogniz[ed] that AEDPA limited rather than expanded the availability of habeas relief." *Shinn v. Ramirez*, 596 U.S. 366, 386 (2022) (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)). Similarly, we have noted that equitable doctrines "should not be used to thwart the intent of Congress in establishing a statute of limitations for habeas claims." *Kiel v. Scott*, No. 98-6208, 1999 WL 76910, at *2 (10th Cir. Feb. 18, 1999). So while we recognize the miscarriage-of-justice exception to AEDPA's statute of limitations, we are mindful not to extend it beyond its limited scope. *See Shinn*, 596 U.S. at 384–85. Hahn contorts these principles with his claim that our decision is an expansion of "a judge made limitation" to habeas relief. What he characterizes as an "expansion" of *Bousley* is in fact a refusal to stretch an equitable exception's application. It is Hahn's reading of *Bousley*, not ours, that would expand judge-made law and encroach upon the relevant statutory command: the limitations period imposed by § 2255.

In sum, we conclude *Bousley* requires a § 2255 movant to prove actual innocence of any equally serious or more serious charges dismissed in exchange for his plea before he can receive the miscarriage-of-justice exception. Hahn has not argued that he is actually innocent of the dismissed § 2251 charges, which we have

33

determined were equally serious to his invalidated § 841 convictions.  We therefore affirm the district court's dismissal of his motion as untimely.

## III.  Conclusion

Hahn's motion passes through § 2255(h)'s jurisdictional gates because it relies on *Dimaya*'s new rule of constitutional law, which under our precedents, the Supreme Court has made retroactive on collateral review.  That said, his motion is untimely, and he is not entitled to the miscarriage-of-justice exception because he has not argued that he is actually innocent of the equally serious charges that the government dismissed in exchange for his plea.  We therefore affirm the district court's judgment.